## FINLEY v. CATHCART ET AL.

[No. 18,347. Filed Nov. 23, 1897. Rehearing denied Feb. 16, 1898.]

PARTITION.—*Judgment.—Quieting Title.—Former Adjudication.* — In
an action by a tenant in common for the partition of his moiety
in the real estate so held, no issue was raised between the defend-
ants as to the extent of their respective interests in the real estate, as
between each other, where defendants did not appear to such
action, but were defaulted, and a defendant therein is not estopped
from asserting title to the portion of the real estate set off to her
codefendant which she held by an unrecorded deed of conveyance
made prior to the partition proceeding.    *pp. 471-481.*

APPEAL AND ERROR.—*Rehearing.—Petition.*—A petition for a rehear-
ing must state specifically the errors which the petitioner considers

the court committed in the former hearing; those not included therein will be deemed waived, and will not be considered. *pp. 489, 490.*

From the Washington Circuit Court. Reversed.

*Asa Elliott,* for appellant.

*Harvey Morris,* for appellees.

JORDAN, J.—Appellant instituted this action to quiet title to certain described real estate situate in Washington county, Indiana. Appellees Daniel E. Cathcart and wife appeared to the action, and filed an answer in two paragraphs, the first being the general denial. The second set up facts whereby they sought to establish the defense of *res judicata* between the appellant and the appellee Daniel E. Cathcart. Upon the question of title to the lands in dispute by reason of a judgment in an action for partition, wherein the appellant and said appellee were defendants, but were defaulted by reason of their failure to appear. Under the issues joined, the court made a special finding of facts, and stated its conclusion of law adversely to the appellant, and over her objections rendered a judgment against her as to the lands in controversy.

The material facts in the case, as found by the court, are as follows: In 1891, William Cathcart died, at Washington county, Indiana, intestate, the owner in fee simple of eighty acres of land, of which that described in the complaint was a part. He left surviving no widow, but seven children, including the appellant and appellee Daniel E. Cathcart. Appellant, after the death of her said father, appears to have intermarried with one Finley. By virtue of the death of their father, his lands descended to his children in equal parts, and they held the same as tenants in common. In 1892, two of the children conveyed their interest of two-sevenths to the appellant, and in 1893 appellee, Daniel E. Cathcart, by his deed of "general

warranty," conveyed his undivided one-seventh in the said tract of land to his sister, the appellant. This deed was delivered, but not recorded. Including the interest which appellant acquired by descent and that which was vested in her by the conveyances heretofore stated, she became invested with, and was the owner of an undivided four-sevenths of the real estate. Some time prior to September, 1896, William F. Cathcart, one of said children, conveyed his one-seventh to one Reyman, who, prior to September, 1896, conveyed the same jointly to Walter, William S., and Stephen S. Mabry. Prior then, to September 14, 1896, said tract of land was held undivided in common as follows: One-seventh by the Mabrys jointly, four-sevenths by appellant, one-seventh each by John M. and Minnie E. Cathcart, the two latter being son and daughter of said William Cathcart, deceased. On the 14th day of September, 1896, the three Mabrys filed a petition for partition in the Washington Circuit Court, making the appellant, Mrs. Finley, John M. Cathcart, Minnie Cathcart, and the appellee, Daniel E. Cathcart, defendants thereto, claiming or alleging in their petition that they, the plaintiffs, each owned one-twenty-first interest in value in the lands, and that appellant, Phalicia A. Finley, owned three-sevenths, and appellee, Daniel E., John M. and Minnie Cathcart each owned one-seventh. All of the said defendants, being duly notified of the pendency of said action, failed to appear and were defaulted, and thereupon the court, on the petition in said proceeding, ordered that the land be partitioned as follows: One-seventh in value jointly to said petitioners, three-sevenths to the appellant, Mrs. Finley, and one-seventh to appellee, Daniel E., and one-seventh each to John M. and Minnie E. Cathcart. Commissioners were appointed by the court, and they partitioned the lands accord-

ingly, assigning to Daniel E. Cathcart, the appellee, one-seventh of the real estate, which is the same now in dispute. The partition so made was confirmed by the court. The court further finds "that plaintiff, but for said partition record, would own one-seventh in value more than was set off to her in severalty in said action."

In view of these facts, counsel for appellant contends that she is not precluded or estopped by the judgment of the court in the partition action from asserting title to the appellee's interest in the land through his deed of conveyance to her; while on the other hand, counsel for appellee earnestly insists, that as the statute relative to partition proceedings requires the rights and title of the parties to be stated in the petition, and as the petition filed by the Mabrys alleged that appellee's interest was one-seventh and appellant's three-sevenths, and as partition was made accordingly, and confirmed by the court, the question is res judicata, and appellant is now estopped by the judgment from asserting through her deed from appellee any claim against him to the one-seventh which had been vested in her by said conveyance prior to the commencement of the action for partition. Or, in other words, the insistence of counsel for appellee virtually is that upon the issues tendered alone by the petition of the plaintiffs in the partition action the court was authorized to order, as it did, under the averments of the petition, that the interests of the several defendants in the land, as therein alleged, be partitioned to each of them in severalty, and thereby conclusively settle, as between each of them, all their rights, title, and interests in and to the premises.

In order to determine the question at issue between the parties to this appeal, an examination of the statute concerning the partition of lands becomes essen-

tial, as it certainly will be helpful in arriving at a correct solution of the controversy. Section 1200, Burns' R. S. 1894 (1186, R. S. 1881), provides that, "Any person holding lands as joint tenant or tenant in common * * * may compel partition thereof in the manner provided by this act." The section next following provides that, "Any such tenant may apply to the circuit court, * * * by petition, setting forth a description of the premises and the titles therein of the parties interested." By the next section it is provided that the pleadings, proceedings and practice shall be the same as in civil actions, except as otherwise provided in this act. Section 1203, Burns' R. S. 1894, in part, reads as follows: "If upon the trial of any issue, or upon default, or by consent of parties, it shall appear that partition ought to be made, the court shall award an interlocutory judgment that partition be made to parties who may desire the same, specifying therein the share assigned to each, and taking into consideration advancements to heirs of a person dying intestate; and the residue of the premises shall remain for the persons entitled thereto, subject to a future partition." Section 1207, Burns' R. S. 1894, provides that, "Two or more persons may, if they choose, have their shares set off together." It is evident that any person who comes within the provisions of section 1200, *supra,* when the land is susceptible of division without damage to the owners, may enforce partition, and is entitled to have his interest in the premises assigned to him in kind, and' thereby have and hold the same in severalty. But it does not follow in such a case, when one or more co-tenants, as was done in the partition action herein mentioned, petition the court for partition, making other alleged co-tenants defendants, and where the latter are defaulted, and do not appear to answer the

petition, and no cross-complaint is filed by any of
them tendering any issue between themselves, and
they in no manner express to the court a desire or re-
quest to have their respective interests in the premises
set off, that the court may, under such circumstances,
proceed to order, upon the petition alone, that parti-
tion be made among such defendants, and assign to
each the interests alleged in the petition, and thereby
preclude said defendants, as between each other, as
to all their rights, titles and interests in and to the
real estate which was the subject of partition.    The
language of section 1203, *supra,* is, "If   *   *   *   it
shall appear that partition ought to be made the court
shall award an interlocutory judgment that partition
be made to *parties who may desire the same,*   *   *   *
taking into consideration advancements   *   *   *
and the *residue of the premises* shall remain for the per-
sons entitled thereto, *subject to future partition.*"   (The
italics are our own.)    In *Pipes* v. *Hobbs,* 83 Ind. 43, this
court, in passing upon the sufficiency of a petition in
a partition action, said, "The statute provides that
'the court shall award an interlocutory judgment that
partition be made to parties who may desire the same,
specifying therein the share assigned to each,   *   *   *
and the residue of the premises shall remain for the
persons entitled thereto, subject to a future parti-
tion.'   *   *   *

"The court needs to know the interest or shares so far
as to be able to specify them in making the partition,
—the portions that are to be set off, each to the owner
or owners thereof desiring partition, and the residue,
which is not to be partitioned among its owners, must
be known.

"When there are two or more defendants, and the
complaint has described the premises and the plain-
tiff's right and title therein, showing the share which

he desires to have assigned to him by partition, it is a sufficient further compliance with the statute to set forth the rights and titles of the parties interested in the residue of the premises as one share owned by them all, leaving the parties entitled to such residue, each of whom should be best qualified to state his individual interest, to seek partition for themselves. If one of such defendants desire that his individual share be set off to him, he has an interest in having the record to indicate that share, and he may state it in his own pleading."

This decision seems to assert a correct rule, and supports us in holding, as we do, under the facts in this case, that it was not essential in the partition action instituted by the Mabrys, in order to award to them the right or relief to which they were entitled, for the court to so extend its order as to direct partition to be also made among the defendants, and order shares corresponding to those recited by the plaintiffs in their petition to be set off in severalty to each of said defendants. But, the court in the case in question having so ordered, and also confirmed the action of the commissioners, in assigning in severalty the alleged interests to the defendants, including appellant and the appellee, the question is, can the appellee, who had devested himself of all interest in the land prior to the action in partition, shield himself behind such judgment, and thereby parry the force and effect of his warranty deed, and succeed in virtually wresting the land from the appellant for his own benefit? It has been repeatedly held by this court that ordinarily a judgment in partition does not settle questions of title unless the same have been directly put in issue by the pleadings; or, in other words, the judgment does not create a new title, nor affect after-acquired titles, but simply divides the premises into separate

shares under the titles existing at the time of parti-
tion. This seems to be the doctrine asserted in
*Miller* v. *Noble,* 86 Ind. 527; *Elston* v. *Piggott,* 94 Ind.
14; *Habig* v. *Dodge,* 127 Ind. 31. *Vide* Black on Judg-
ments, sections 660 and 661. Ordinarily the presump-
tion is that title is not in issue in a partition proceed-
ing. *Green* v. *Brown,* 146 Ind. 1.

But it must be accepted as a well affirmed principle
of law that a judgment or decree in a partition suit,
when the court has jurisdiction over the parties and
the subject-matter, is as conclusive between the par-
ties upon all the material issues in the case which
the court was called upon to examine, and which,
under the pleadings, were tried and determined, as
are judgments in other actions. Freeman on Co-Ten-
ancy, section 530; *Isbell* v. *Stewart,* 125 Ind. 112; *Habig*
v. *Dodge, supra;* Freeman on Judgments, section 304;
Black on Judgments, *supra.* In fact, it is an essential
element or principle underlying the doctrine of former
adjudication that the judgment in the former action
settles all material issues involved between the parties
to that action, and all matters which might have been
properly litigated and determined within the issues
made or tendered by the pleadings in the case, and to
this extent the judgment is not subject to a collateral
attack. 1 Van Fleet's Former Adjudication, p. 2;
*Faught* v. *Faught,* 98 Ind. 470. This is the rule as-
serted and adhered to by this court from *Fischli* v.
*Fischli,* 1 Blackf. 360, down to the present time, and
this principle is applicable to final judgments in par-
tition the same as it is to those in other actions.
*Watson* v. *Camper,* 119 Ind. 60. The court or jury try-
ing the cause, however, cannot, in any case, legiti-
mately go outside of the issues under the' pleadings, and
determine matters not embraced within such issues;
and what was not within the latter, although they

might have been extended to include it, will not, at least, be presumed to have been conclusively adjudicated.  *Griffin* v. *Wallace,* 66 Ind. 410, and cases there cited.  It is affirmed in *Jones* v. *Vert,* 121 Ind. 140, that a party, to successfully invoke the doctrine of former adjudication, must be one who, in the former action, tendered to the party against whom he invokes it an issue to which the latter could have demurred or pleaded; and, where two or more defendants make an issue with the plaintiff, a judgment determining that issue in favor of the defendant does not settle the question between codefendants.  In the case last cited the action was instituted to foreclose a vendor's lien.  The defendants sought to avail themselves of the defense of former adjudication, and alleged in their answer that in a former suit prosecuted by one Sterne to foreclose a mortgage, to which action the plaintiff and defendants were party-defendants, the former had set up the lien then in controversy, and the court rendered its judgment against Sterne, the plaintiff, and quieted the title of the defendants to the real estate described in the complaint.  It was held that these facts fell far short of constituting a good defense.  The court, in passing upon the question, in the course of its opinion, per Mitchell, J., said: "The defendants in the foreclosure suit might possibly have put the validity of the vendor's lien in issue by filing a cross-complaint. *Woolery* v. *Grayson,* 110 Ind. 149.  This does not appear to have been done, and we cannot presume that it was.  There does not seem to have been any issue tendered or made, between the defendants.  In short, there does not appear to have been any suit pending between them.  Any judgment, therefore, that the court may have pronounced, which purported to settle any title, or claim, between the defendants, was *coram non judice,* and void.  *McFadden* v. *Ross,* 108 Ind. 512; *Griffin* v. *Wallace,* 66 Ind. 410."

It is asserted in *Wilbridge* v. *Case*, 2 Ind. 36, that "without an issue, nothing is tried, and, of course, nothing determined, and a judgment in such case should bind neither party." Unless it can be said that the issue raised alone by the petition in the partition suit was sufficient to warrant the court in determining the question of title between appellant and appellees then there was no other issue, as we have seen, under which it could have been decided.

The facts necessary to constitute a cause of action in favor of the Mabrys, and entitle them, under the statute, to a partition of their alleged moiety, it would seem, were that they held and owned the same in the lands described in their petition, undivided, as tenants in common with the defendants. These appear to have been the only material issues which were tendered by the petition to the defendants. All such matters, and all others coming within the material issues in the case, as between the plaintiffs and defendants, must be held to have been settled by the judgment, and as to such matters it would not be open to collateral attack. But it cannot, in reason, be said that the issue so raised by the petition must be presumed and held to have conclusively settled all matters between the defendants. As it appears, none of the defendants filed a cross-complaint, nor in any manner appeared to the action, and requested partition of their interests, and in reality no issue was raised in any way by the defendants as between each other. It is evident, therefore, under such circumstances, in the light of the authorities, that it can be said that the court was not called upon, nor was it relevant for it, to examine into and determine matters of an adverse nature existing between any of the defendants. While it may be conceded that under section 386, Burns' R. S. 1894 (383, R. S. 1881), the defendants, by their de-

fault in question, as between them and Mabrys, the
plaintiffs, must be deemed to have admitted all the
material and traversable averments constituting the
cause of action.    That such is ordinarily the result of
a defendant's default, has been repeatedly decided by
this court.    But surely the rule cannot be extended
so as to justify a holding that appellant, by her
default, admitted that she was seized of an interest
in the realty of three-sevenths only, and appellee, her
codefendant, of one-seventh.    In fact, we fail to rec-
ognize any features or provisions in the partition stat-
ute which can be said, on the default of the defendants
in the action instituted by the Mabrys, to have put in
issue, *ipso facto,* any title or interest between any of
said defendants, so as to warrant the court by its judg-
ment to conclusively adjudicate the same.    Decisions
of other states, to which we have been referred, were
in partition procedings based upon statutes quite dif-
ferent from our own, and therefore are not influential
on the question here involved.    The case of *Forder* v.
*Davis,* 38 Mo. 107, in no manner lends support to appel-
lees' contention.    The facts in that case were dissim-
ilar from those in this appeal, and the statute under
which the partition there involved was made differed,
in an essential respect, from our own.    It is true, the
Missouri statute required the petition to set forth the
titles of all the parties interested in the lands, but it
also required the court to declare the interests of the
defendants in the realty, as well as that of the peti-
tioner, and it made such judgment binding and con-
clusive as to all parties to the proceedings.

It may be correctly said that the Mabrys by their
petition for partition, challenged the defendants, one
and all, to set up and avail themselves of any title
or matter which would defeat the former in their de-
mands for partition, or which would diminish the

interest which they claimed to have and hold in the real estate; but certainly it cannot be successfully urged that the petition also required or compelled the appellant to present and litigate all matters, rights, and titles as between herself and appellee, and, having failed to do so, she must now, under the circumstances, be held to be precluded by the court's judgment in ordering and confirming partition among the defendants. The contention that, under the facts, such must be the result, in our opinion is destitute of any reasonable support. To affirm such a rule would not only, as we believe, operate mischievously in the future, but would manifestly work an injustice in the case at bar. That defendants in a partition proceeding may, between themselves, by a cross-complaint, settle all legal or equitable rights and titles is well settled. *Martindale* v. *Alexander*, 26 Ind. 104; *Milligan* v. *Poole*, 35 Ind. 64; *Ferris* v. *Reed*, 87 Ind. 123.

Without further extending this opinion, we are constrained to hold that the petition filed by the Mabrys for partition did not put in issue, between appellant and appellees, the title which the former held by the deed from the latter, and therefore, she is not precluded or estopped by the judgment from asserting, as against appellees, her title to the land in dispute through said deed. We must not be understood as holding that, had appellant, under the circumstances, been satisfied with the share assigned to her, and had accepted and acquiesced in such partition, she would not have thereby confirmed the same, and made it effectual between her and the appellee, nor as to what would be her situation were this controversy between her and an innocent purchaser for value from appellee. These questions are not involved, and therefore not decided.

VOL. 149—31

It follows that the court erred in its conclusion of law, and the judgment is reversed, and the cause remanded to the lower court, with instructions to restate its conclusion in favor of appellant, and render its judgment quieting her title to the lands in question.

### DISSENTING OPINION.

HOWARD, C. J. (Dissenting.)—While agreeing with the greater part of what is said in the principal opinion, I yet find myself unable to join in the conclusion reached by the majority of the court as to the force and effect of the decree rendered in the partition suit. That decree, as I think, was binding upon the appellant as well as upon all other parties thereto, and was a complete estoppel against any right on her part to bring this action to quiet her title to land there set off to appellee.

The appellant and the appellee, Daniel E. Cathcart, are children of William Cathcart, deceased. This action was brought by her to quiet her title to a part of the lands owned by her said father at the time of his death. There are seven children of William Cathcart, and the share of Daniel E. Cathcart, being the undivided one-seventh of the real estate of his said father, or eleven acres, as set off in partition, is the land here in controversy. This land appellant claims was conveyed to her by her said brother by an unrecorded deed, previous to the partition suit; but he claims that the land was set off to him in said partition.

The court finds specially that in 1893, Daniel E. Cathcart conveyed to appellant his said undivided one-seventh interest, but that the deed therefor, though delivered, was never recorded; that, in September, 1896, in a partition suit, to which the appellant and

the appellee Daniel E. Cathcart, together with all the other owners of the said lands of William Cathcart, deceased, were made parties, it was alleged in the complaint that this appellant owned three-sevenths interest in said land, instead of four-sevenths, and that the appellee Daniel E. Cathcart owned one-seventh; that this·appellant and the said appellee were duly summoned in said suit for partition, but each made default; that the court found the allegations of the complaint to be true, and ordered said lands partitioned and set off in severalty, as stated and prayed for in said complaint; and that the land in dispute here was, in said action, set off to the appellee Daniel E. Cathcart, and the partition so made, confirmed and ordered made effectual by the court, and no appeal has been taken from said judgment. As conclusions of law, the court found that the appellant never owned in severalty the particular land ` here sued for, and, the partition record being against her, she is now estopped from suing in ejectment for the eleven acre tract.

Appellant seems to occupy an inconsistent position. She claims the eleven acres, as set off by metes and bounds in the partition suit. But in the partition proceedings the eleven acres were set off to her brother Daniel, and not to her. Her remedy, if any wrong were done her, would seem to have been to appear to the partition suit, and assert her claim under the deed from Daniel. Having failed to appear there, and having failed to appeal from the judgment there entered, or to bring any direct attack against such judgment, it must be, as the court concluded, that she is estopped from making claim to the eleven acres there set off to her brother.

It is said that the title to the land in controversy was not put in issue by the partition suit. The record,

as it seems to me, shows that the title then held by each of the parties was in issue. The complaint, alleged that she was the owner of three-sevenths, in value, of her father's land, instead of four-sevenths, and that her brother was the owner of the one-seventh now claimed by her. She did not appear to that suit, but, by her default, admitted that the allegations of the complaint were true, as, indeed, the court also expressly found. Whatever ownership she then had in the land, was in issue, and before the court for determination; and it was adjudged that she was the owner of three-sevenths only, in value, and the same was accordingly set off to her. If the judgment so entered were not conclusive, the partition suit would be but an idle proceeding.

It is true that title, or, rather, the particular nature and duration of a title, are not in every case in issue in a partition suit. Whether the title is a fee simple, a life estate, a fee for life, a fee-encumbered with a lien, or is one held in trust, may not always be put in issue by the pleadings, and so may not be determined in the action. "The decree in partition," as said in *Elston* v. *Piggott*, 94 Ind. 14, "operates only upon the title held at the time the suit was instituted." After-acquired titles are not affected. Freeman Co-Ten. (2d ed.) section 532; *Kitts* v. *Willson*, 140 Ind. 604. But provided only, at the time of the partition, one has title and the right of possession to an undivided interest in land, the same may be set off to him in severalty. *Shaw* v. *Beers*, 84 Ind. 528.

In the case at bar, however, the nature of the title claimed is not in doubt. The eleven acres in controversy were set apart to Daniel E. Cathcart as the equivalent in value of his undivided one-seventh interest as heir of his father. The appellant's claim is that three years previous to the partition a deed had been

made to her by him for said one-seventh interest. There was, therefore, before the court, the simple question of the then ownership of the land, and the right to the possession of the same; and the judgment on the issue so made must be conclusive. Appellant does not pretend that her title to the land, or her right to its possession, is different now from what it was then. But appellee then had both title and the right to possession, or else the judgment of the court must go for naught. Exactly the same question then decided cannot be here again brought up for decision.

In *Isbell* v. *Stewart*, 125 Ind. 112, partition of lands inherited from a first husband was made between the widow and children, the second husband being also joined as a party. The court ordered the land sold, and the proceeds distributed according to the interests of the parties in the land, except that the widow's portion was put in charge of a trustee, to pay the income to her and her husband during her life, after which her share was to be distributed among the children. On her death the husband sought an order to have one-third of his wife's share paid to him. It was held that the judgment in partition was conclusive as to the interests of the parties, and could not be thus collaterally attacked or modified. "We are not willing," said the court, "to extend the doctrine of such cases as *Avery* v. *Akins*, 74 Ind. 283; *Utterback* v. *Terhune*, 75 Ind. 363, and *Miller* v. *Noble*, 86 Ind. 527, to such a case as this, for we think those cases and the cases following them restrict the effect of a judgment in a partition suit quite as much as can possibly be done under the provisions of our statute." And the court adds, quoting from Freeman on Co-Ten., section 530: "The rule that a judgment is conclusive upon all the issues determined by it, is not the less applicable to judgments in partition than to judgments in any other

'form or kind of action." See also *Brown* v. *Grepe*, 135 Ind. 4, and *Irvin* v. *Buckles*, 148 Ind. 389.

It is said that the appellant and appellee were both defendants in the partition suit, and that, while the issues as between the plaintiff and the defendants in that suit were finally determined, it does not follow that the rights of the defendants as to one another were also determined. And we are referred to cases where an action is brought on contract against two or more defendants, and where such defendants are not precluded afterwards, by independent actions, from determining which of such defendants were principals and which only sureties. As to the cases of this kind, the statute has expressly authorized action for trial of suretyship. Section 1226, Burns' R. S. 1894 (1212, R. S. 1881).

But it may be admitted that if, in any case, the pleadings do not involve a determination of the rights and interests of the defendants as to one another, there is nothing to prevent the bringing of another action to determine such rights and interests. It is simply a question of former adjudication; and if in the original action the issues afterwards sought to be determined were not, and could not be, decided, then the bringing of the subsequent action cannot be held to be a collateral attack upon the first judgment. Thus, in *Jones* v. *Vert*, 121 Ind. 140, there had been an action for foreclosure of a mortgage of real estate, and one of the defendants had sought, by answer, to set up a vendor's lien as against the plaintiff in foreclosure. It was held that the judgment there entered was no bar to an action afterwards brought by the holder of the vendor's lien to foreclose the same against her codefendants. It is plain that this ruling was correct. While the right of the holder of the vendor's lien, as against the plaintiff in foreclosure, was in

issue in the first action, and was there determined, there was in that action no issue as to the rights of the defendants among themselves in relation to such vendor's lien. Moreover, it is not necessary that the complaint to foreclose a mortgage should state the nature of the liens claimed by the several defendants thereto. It is sufficient to state simply that they claim some title or interest in the property subordinate to the rights of the plaintiff.

In partition, however, it is different; the statute does require that the complaint shall set forth "a description of the premises, and the rights and titles therein of the parties interested." The then existing rights, titles, and interests of all the parties in and to the land to be partitioned are therefore put in issue by the very pleading prescribed by the statute. Section 1201, Burns' R. S. 1894 (1187, R. S. 1881). So, in *McCarthy* v. *McCarthy*, 66 Ind. 128, a complaint in partition which "gave a description of the land, and set forth the rights and titles therein of the parties respectively," was held to be a compliance with the requirements of the statute. And in *Shaw* v. *Parker*, 6 Blackf. 345, the court said: "The order for a partition in such case should ascertain and declare the respective proportions of the common owners of the premises." In support of this last decision was cited the strong case of *Lease* v. *Carr*, 5 Blackf. 353, in which Dewey, J., with unanswerable argument, set forth the nature and scope of a decree in partition, making the partition "firm and effectual amongst the parties thereto forever." In *Wright* v. *Nipple*, 92 Ind. 310, it was said, in like manner, that an interlocutory judgment in partition "settles and determines the rights of the parties in the common property, and upon these questions it is final and conclusive." See further Van Fleet Col. Attack, sections 153, 155, 628, 631, 704, and 726.

In addition, the question here is not whether the court might have made a different decree, not whether it might have set off to the defendants in the partition suit all their land in one parcel, subject to a future partition suit, to be brought by them. No doubt this could have been done. But that is not the question before us. The question to be decided in this action is whether the court, having jurisdiction of the persons and the subject-matter in the partition suit, was authorized to make the decree which was actually made, and whether the appellant as a party to that decree, having failed to appeal therefrom, or to take any action to set it aside, may now make this collateral attack upon it.

In Missouri, as in this State, the statute requires that the complaint for partition shall set forth the rights and titles of all persons interested in the premises sought to be divided. Under this statute, it was said, in *Forder* v. *Davis*, 38 Mo. 107, as cited in Freeman on Co-Ten. (2d ed.), section 531: "The judgment of partition establishes the title to the land which is the subject of the partition, and, in an action of ejectment upon adverse possession, or an adverse title existing at the date of the partition, it is final and conclusive at law upon all the parties to the record, and upon all persons holding under them afterwards. * * * * * The plaintiff might have asserted his adverse title in the partition suit, or pleaded it in bar, and, if decided against him, he had his remedy by appeal or writ of error. The judgment must be taken as conclusive here, that no such defense was made, or that, if made, it was decided against him. Not having asserted his claims there, they were wholly barred by law."

And Mr. Freeman very pertinently adds: "It is, perhaps, unfortunate that judges so often remark that

partition confers no new title, but only divides that which the parties previously possessed, because the remark justifies the inference that a judgment in partition has little or no effect upon the title. The truth is that a judgment in partition is as conclusive as any other. It does not create or manufacture a title, nor devest the title of anyone not actually or constructively a party to the suit; but it does operate by way of estoppel; it prevents any of the parties from relitigating any of the issues presented for decision, and the decision of which necessarily entered into the judgment; and it devests all titles held by any of the parties at the institution of the suit."

Appellant's title, at and long before the date of the partition suit, was the same as that now claimed by her. There was then an adjudication against her as to that title, and I think that she should now be estopped from making this collateral attack upon the judgment to which she was then a party.

McCabe, J., concurs in the dissenting opinion.

## On Petition for Rehearing.

Per Curiam.—The appellee in this cause has filed what purports to be a petition for a rehearing. It wholly fails to respond to the requirements of rule thirty-seven of this court, for the reason that it is nothing more than a general statement to the effect that the judgment of the court on the former hearing was erroneous. In fact, the paper which is denominated a "petition" is but an extended argument wherein the appellee reiterates, and attempts more fully to support the reasons given in his original brief, in opposition to a reversal of the judgment of the lower court. A petition for a rehearing, in this court, is a pleading, and should not be an argument; and in order that it may conform to the rule of appellate practice,

The Cleveland, etc., R. W. Co. *v.* Miller, Admr.

as it seems to be settled by repeated adjudications of this court, it must state specifically the errors which the petitioner considers the court committed in the result reached in the former hearing, and general statements, or assertions, that the decision is erroneous, will not suffice. An applicant for a rehearing should include in his petition all the grounds upon which he bases his claim for a rehearing, and those not included therein, will be deemed by the court to have been waived, and will not be considered. The alleged petition herein, for the reasons which we have stated, does not comply with the rule as required, and consequently presents no question for review. It is therefore overruled.